Michael J. ANDERSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 2641.

Supreme Court of Alaska.

April 8, 1977.

R. Collin Middleton and Craig M. Cornish, Wagstaff & Middleton, Anchorage, for appellant.

Avrum M. Gross, Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty., and Glen C. Anderson, Asst. Dist. Atty., Anchorage, for appellee.

## OPINION

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

ERWIN, Justice.

The primary issue on appeal in this case is the constitutionality of AS 11.15.134(a),[1] which makes it a crime to commit a lewd or lascivious act upon or with the body of a child under 16 years of age, intending to arouse the sexual desires of either the actor or the child.

On April 25, 1974, an indictment was returned against Michael J. Anderson, charging:

> That on or about the 16th day of April, 1974, at or near Anchorage, in the Third Judicial District, State of Alaska, Michael J. Anderson . . . did unlawfully, feloniously, and with intent to gratify his sexual desires, commit a lewd and lascivious act upon the body of child under 16 years of age, to-wit: [R.N.T.], age 13, by placing the said child's penis in his mouth and sucking on it.

---

1. AS 11.15.134(a) provides:

A person who commits a lewd or lascivious act, including an act constituting another crime, upon or with the body of a child under 16 years of age, intending to arouse, appeal to, or gratify his lust, passions, or sexual desires, or the lust, passions, or sexual desires of the child is punishable by imprisonment for not more than 10 years nor less than one year.

All of which is contrary to and in violation of AS 11.15.134 and against the peace and dignity of the State of Alaska.

On June 18, 1975, appellant moved to dismiss the charge against him on the ground that the statute he was charged with violating, AS 11.15.134, is unconstitutional. Superior Court Judge Peter J. Kalamarides denied the motion on August 5, 1975. On August 16, appellant entered a plea of nolo contendere to the charge, preserving his right to appeal Judge Kalamarides' denial of the motion to dismiss.

At the time the plea of nolo contendere was entered, Anderson was examined by the court and by his own attorney for the purpose of determining whether there was a factual basis for the plea. As appellant notes and the State does not dispute,[2] the testimony revealed that appellant Anderson was a forty-year-old homosexually oriented individual at the time of the hearing. The act for which Anderson was convicted occurred in his home. The victim, R.N.T., came to Anderson's home at Anderson's invitation and without the exertion of any apparent mental or physical coercion by Anderson. Anderson had met the child three days earlier at a movie. At that time he had invited the child to come to his home. Anderson stated he had explained to the child at that time that he could expect to have the act of fellatio performed on him if he came to Anderson's home.[3]

Appellant asserts that the statute under which he was convicted, AS 11.15.134(a), is unconstitutionally overbroad. He argues that the statute sweeps within the scope of its prohibition constitutionally protected conduct as well as conduct which the State could constitutionally prohibit. Appellant is concerned that AS 11.15.134(a) infringes three "rights": (1) the first amendment right of adults to possess and to exhibit literature; (2) the right of adults to privacy in their homes; and (3) the right of juveniles to control their own sexual development.

■ Appellant argues that the statute, which prohibits lewd or lascivious acts "upon or with the body of a child," could include acts which a child sees or hears because such acts would act upon the child's eyes or ears, both of which are part of his or her body. From this appellant concludes that an adult could be convicted of violating AS 11.15.134(a) if he or she displayed certain films or books or even sex education material to persons under sixteen if either the adult's or the child's passions were aroused by the display. Under the same rationale, appellant fears that AS 11.15.-134(a) could be used to convict parents who dress in front of their children, those who tell dirty jokes, and those who are passionately affectionate with other adults while in the presence of children.

If AS 11.15.134(a) could reasonably be interpreted to punish all of the types of conduct which appellant lists, the statute would raise substantial questions concerning rights to free speech, association and privacy under both the federal and Alaska constitutions. However, the State argues that AS 11.15.134(a) is meant to punish only lewd and lascivious physical contact with children. We agree. We construe the words "lewd or lascivious act . . . upon or with the body of a child" to require physical contact of the child's body by the adult or by some instrumentality controlled by the adult.

This construction of AS 11.15.134(a) reflects the apparent intent of the legislature

**2.** The State's brief contains no statement of the case and no recitation of the facts. Consequently it must be assumed that the State does not dispute appellant's statement of the facts, including appellant's summary of the facts revealed at the time the plea was entered and sentence pronounced.

**3.** At the hearing Anderson testified that he had never forced anyone to have sexual relations with him and that he had not forced R.N.T. to have sexual relations with him. He also testified that the boy appeared to have had similar sexual experiences before and that the boy appeared to enjoy the act performed by Anderson. Much of this testimony appears to have been presented in aid of sentencing, which occurred at the same hearing in which the plea was entered.

in this area. The statute appears in Chapter 15 of Title 11, which governs offenses against the person. While appellant is correct in noting that the construction we have adopted leaves a variety of acts calculated to arouse the sexual desires of children outside the statute, these acts are better dealt with under Chapter 40 of Title 11. Chapter 40 governs "Crimes Against Morality and Decency" and includes the crimes of indecent exposure[4] and contributing to the delinquency of a child.[5]

Under the construction of the statute we have adopted, the first amendment right of adults to possess and exhibit literature is not implicated by the statute. Nor is the right of adults to privacy in their homes implicated at least insofar as that right protects parents dressing in front of children, those who tell dirty jokes, and adults who are passionately affectionate with other adults in the presence of children. Therefore we proceed to consider the third aspect of appellant's overbreadth challenge to AS 11.15.134(a): that the statute violates the right of juveniles to control their own sexual development.

■ The State argues that an adult convicted of a lewd and lascivious act toward a child has no standing to challenge the statute prohibiting the act on the ground that it sweeps within its prohibition the sexual privacy rights of juveniles.[6] The State asserts that overbreadth analysis is only applicable to statutes which arguably chill first amendment rights and not to statutes which arguably chill other constitutionally protected activities. Since appellant's argument is that AS 11.15.134(a) infringes on the right of juveniles to privacy, the State maintains that overbreadth analysis is inappropriate and that therefore appellant Anderson does not have standing to raise the issue. The State also contends on the merits that the right to privacy does not include a constitutional right to engage in private homosexual conduct, even between consenting adults.

In response appellant Anderson asserts that a party raising an overbreadth challenge to a statute does have standing to invoke the rights of others. Appellant places primary reliance on Marks v. City of Anchorage, 500 P.2d 644, 656 n. 7 (Alaska 1972), in which this court stated that:

> to protect first amendment freedoms, the Court has allowed "vicarious" assaults on invalid statutes; a defendant need not show that his conduct was itself entitled to protection as a prerequisite to successfully attack an overbroad or vague statute.

Appellant also relies on the following language from Marks:

> The overbreadth doctrine has evolved to give adequate breathing room to specific first amendment freedoms; a statute violates the doctrine when constitutionally-protected conduct . . . [is] included within the ambit of the statute's prohibition.[7]

From the court's use of the words "constitutionally protected conduct," appellant concludes that the overbreadth doctrine is applicable to constitutionally protected conduct as well as to speech. However, the conduct involved in Marks was conduct with a communicative aspect and therefore the potential chilling effect was on first amendment rights.

While the scope of the overbreadth doctrine was viewed as broader a few years ago,[8] the United States Supreme Court has

---

4. AS 11.40.080.

5. AS 11.40.130.

6. Appellee maintains that the cases in which a party has been permitted to assert the rights of another have all involved a party in a special relationship with the third party whose rights were being asserted. Appellee relies on *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); and *Wagstaff v. Superior Court,* 535 P.2d 1220 (Alaska 1975).

7. 500 P.2d at 646 (footnote omitted).

8. See Amsterdam, "Federal Constitutional Restrictions on the Punishment of Crimes of Status, Crimes of General Obnoxiousness, Crimes

adopted the position advanced by the State in this case. In *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 168, 92 S.Ct. 1965, 1969, 32 L.Ed.2d 627 (1972), the Supreme Court stated that

> [w]hile the doctrine of "overbreadth" has been held . . . to accord standing by reason of the "chilling effect" that a particular law might have upon the exercise of the First Amendment rights, that doctrine has not been applied to constitutional litigation in areas other than those relating to the First Amendment.

*Cf. United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975).

We recognized this limitation on the overbreadth doctrine in *Stock v. State,* 526 P.2d 3, 7 (Alaska 1974), in which we stated:

> if the statute is overbroad so that it may be construed in a manner to restrict the exercise of first amendment rights, it may be found to be invalid. (Footnote omitted)

We have eliminated appellant's "pure speech" claims by construing AS 11.15.-134(a) to prohibit only lewd and lascivious *physical contact* with children. Further we hold that overbreadth analysis is generally available only to challenge statutes which arguably chill exercise of first amendment rights. We therefore find the overbreadth doctrine to be inapplicable to the facts of this case.

Appellant next asserts that the statute under which he was convicted is void for vagueness. First, he argues that an ordinary citizen would be forced to speculate as to whether his or her conduct is prohibited by the statute. He next asserts that the statute lends itself too readily to arbitrary and discretionary police enforcement. Finally, Anderson maintains that the statute

leaves judges and juries free to decide, without legally defined standards, what conduct is prohibited. In making his argument, appellant relies on Alaska cases which discuss the void-for-vagueness doctrine and on decisions in other jurisdictions which hold "lewd and lascivious" statutes void for vagueness.

The basic outline of the void-for-vagueness doctrine was recently simply stated by the United States Supreme Court in *Smith v. Goguen,* 415 U.S. 566, 572–573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974):

> The doctrine incorporates notions of fair notice or warning. Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement." (Footnotes omitted)

In *Stock v. State,* 526 P.2d 3 (Alaska 1974), this court discussed the void-for-vagueness doctrine extensively. We listed three factors to consider when determining whether a statute is unconstitutionally vague.

> First, if the statute is overbroad so that it may be construed in a manner to restrict the exercise of first amendment rights, it may be found to be invalid. A statute may not create a threat of criminal penalties which might inhibit the exercise of those basic rights so essential to our form of government such as freedom of speech, press, religion and to assemble peaceably.

> .   .   .

> The second consideration is that a statute must give adequate notice to the ordinary citizen of what is prohibited. This principle involves basic fairness and was long ago enunciated by the United States Supreme Court in *Connally v. General Construction Co.* [269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)], stating:

> > Under these standards . . . legislation is void if written so broadly that, in an appreciable portion of its application, it does or may interfere with protected federal rights.

of Displeasing Police Officers, and The Like," 3 Crim.L.Bull. 205, 225–226 (1967):

> Originating in free speech cases, the doctrine which gives effect to these concerns by invalidating "overbroad" state statutes has lately been extended to protect other federally guaranteed personal liberties. .   .   .

That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

A statute in its broad contours may be subject to criticism for failure to give adequate notice as to all types of conduct which are punishable, but, when not involved with the "overbreadth" problem, may still pass muster if: (a) there can be no question as to its applicability to the particular offense involved, and (b) a construction may be placed upon the statute so that in the future the type of offenses coming within its purview may reasonably be understood.

The third element of analysis in vagueness problems is whether the statute gives undue discretion to prosecuting authorities in determining what constitutes the crime. This can lead to arbitrary enforcement against persons who, due to their particular life styles or other factors, incur the ire of those empowered to determine who shall be prosecuted. There is, of course, a wide discretion inherent in any criminal statute as to who shall be prosecuted. . . . But when inexactitude of statutory language has invited arbitrary enforcement so that there has been a history or a strong likelihood of uneven application, laws have been stricken as unconstitutional.[9]

We have discussed the first consideration listed in *Stock*, overbreadth, at length above. Therefore, we will focus on the issues of whether AS 11.15.134(a) gives sufficient notice to citizens and whether it vests improper discretion in prosecuting authorities.

The most persuasive case cited in support of appellant's argument is the decision of this court in *Harris v. State*, 457 P.2d 638 (Alaska 1969). In *Harris* we held that a statute prohibiting the "crime against nature" was so vague as to be invalid. We could not find anywhere in the common law a standard for upholding the statute against the vagueness challenge:[10]

---

9. 526 P.2d at 7–8 (footnotes omitted).

10. Compare the recent decision of the United States Supreme Court in *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975), upholding a Tennessee statute which prohibited "crimes against nature." The defendant in *Rose* had forced a woman to submit to cunnilingus. He claimed that the statute did not encompass cunnilingus and that it was unconstitutionally vague. The court held that the defendant had fair warning that cunnilingus was included in Tennessee's crimes against nature prohibition because Tennessee had construed its statute to encompass fellatio and because a Maine statute, which Tennessee courts had equated with its own, had been applied to cunnilingus. (423 U.S. at 52, 96 S.Ct. 243)

Although Justice Brennan in his dissent labelled the majority's holding an "extraordinary distortion" of the fair warning requirement (423 U.S. at 54, 96 S.Ct. 243), the majority stated that

> this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties. . . ." Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. . . All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.

> Viewed against this standard, the phrase "crimes against nature" is no more vague than many other terms used to describe criminal offenses . . . . . Anyone who cared to do so could certainly determine what particular acts have been considered crimes against nature, and there can be no contention that the respondent's acts were ones never before considered as such. (423 U.S. at 49–50, 96 S.Ct. at 244; footnote and citations omitted)

The statute challenged by the defendant in *Rose* had been construed by the courts of the state in a manner which gave the defendant notice of "the type of offenses coming within

In Alaska we have no judicial gloss of the statutory term "crime against nature" by which to rescue it from the realm of nebulosity. Looking to decisions of other states is of no great help in determining what should be the ultimate scope of the statute.

\*    \*    \*    \*    \*    \*

The current approach to defining criminal conduct is that of specifying in objective terms the acts and intent prohibited. There are many instances in which the law resorts to the general understanding of the community as the standard of legal result. But where the conduct to be prohibited by a criminal statute is capable of objective definition by language descriptive of precise physical acts and events, it simply will not do to use language so ambiguous as to be capable of expansion or contraction at the whim of the reader. . . . We declare the term "crime against nature" void for vagueness.[11]

■ We agree with appellant Anderson that the terms "lewd and lascivious" taken by themselves seem as imprecise as the phrase "crime against nature," which we held to be unconstitutionally vague in *Harris.* However, the phrase "lewd or lascivious act" is not to be judged on vagueness grounds in isolation from the rest of the statute. The entire proscribed act, i. e., a "lewd or lascivious act . . . upon or with the body of a child . . . intending to arouse" the sexual desires of either the actor or the child, is sufficiently definite to withstand a vagueness challenge. Therefore we need not decide whether a statute prohibiting any "lewd or lascivious act" would be unconstitutionally vague.[12]

its purview." *Stock v. State,* 526 P.2d at 8. This was not true of the statute challenged in *Harris.*

11.   457 P.2d at 644, 647 (footnotes omitted).

12.   We do note that, where possible, criminal statutes should be drafted with "language descriptive of precise physical acts and events" prohibited. *Harris v. State,* 457 P.2d at 647.

■ In reaching our conclusion that the phrase "lewd or lascivious act" used in AS 11.15.134(a) is not unconstitutionally vague when viewed in context of the entire statute, we rely on two cases recently decided by the District of Columbia Court of Appeals. In *District of Columbia v. Walters,* 319 A.2d 332 (D.C. 1974), appeal dismissed for want of a properly presented federal question and cert. denied, 419 U.S. 1065, 95 S.Ct. 650, 42 L.Ed.2d 661, the Court of Appeals found a statute which prohibited "lewd, obscene and indecent acts" to be unconstitutionally vague. The court stated that:

The statute betrays the classic defects of vagueness in that it fails to give clear notice of what conduct is forbidden and invests the police with excessive discretion to decide, after the fact, who has violated the law. . . . [B]y proscribing "any other lewd, obscene, or indecent act" the statute is so encyclopedic in its reach that the areas of reasonable disagreement are limitless.[13]

However, the court in *Walters* also noted that the statute being construed there was unlike other statutes proscribing lewd conduct which had survived vagueness challenges. In the statutes which survived challenge, the term lewd or indecent had been paired with other words which gave the entire statute sufficiently specific meaning. Two examples offered by the court involved statutes proscribing "indecent touching of a minor" and "indecent liberties with a minor." [14]

In *District of Columbia v. Garcia,* 335 A.2d 217 (D.C. 1975), cert. denied, 423 U.S. 894, 96 S.Ct. 192, 46 L.Ed.2d 125 the Court

13.   319 A.2d at 335 (citations omitted).

14.   319 A.2d at 335, citing *State v. Minns,* 80 N.M. 269, 454 P.2d 355 (1969), and *People v. Payne,* 37 Mich.App. 442, 194 N.W.2d 906 (1971). See also *State v. Snyder,* 25 Ariz.App. 406, 544 P.2d 230 (Ariz.App. 1976), holding that a statute prohibiting lewd and lascivious acts is not unconstitutionally vague as applied to acts of fellatio involving minor children.

**358**

of Appeals upheld a prohibition on "lewd, obscene, or indecent sexual proposals." [15] The Court held that unlike the provision declared unconstitutionally vague in *Walters,* the "clause at issue here [is] joined with the term 'sexual proposal,' thereby providing a definite context in which the words can be given meaning." [16] The court went on to construe the statute to proscribe only proposals to commit sodomy, indecent exposure, or any proposals to perform sexual acts which are addressed to children. [17]

We hold that AS 11.15.134(a) is not impermissibly vague because in the context of the entire statute, fair warning is given of the lewd and lascivious acts proscribed. The statute clearly prohibits the act for which appellant Anderson was convicted: fellatio with a child under 16 years of age.

◼ Finally appellant asserts that AS 11.15.134(a) creates an impermissible irrebuttable presumption that juveniles under sixteen years of age are incapable of giving valid consent to sexual acts. We begin by noting that the conduct which appellant Anderson engaged in is prohibited by AS 11.15.134(a) even if the adult has the consent of the juvenile. Further, we hold that AS 11.15.134(a) is a proper legislative enactment because it does not prohibit conduct which the State may not constitutionally prohibit.

◼ In reaching this result, we need not decide whether the right to privacy made explicit in the Alaska Constitution [18] and articulated by this court in *Ravin v. State,* 537 P.2d 494 (Alaska 1975), protects certain sexual practices engaged in by adults in private with other consenting adults. We do note that "citizens of the State of Alaska have a basic right to privacy in their homes under Alaska's constitution." [19]

◼◼ While appellant is correct in his assertion that juveniles have certain rights to privacy and to express their own autonomy, [20] we have recognized that the State's interest in the well-being of its children "may justify legislation that could not properly be applied to adults." [21] Assuming that juveniles have certain rights to sexual privacy, [22] we nevertheless conclude that the State may exercise control over the sexual conduct of children beyond the scope of its authority to control adults. [23] We conclude further that the State may forbid an adult to have fellatio with a child under 16 regardless of whether the child consents to

15. *Contra, Morgan v. City of Detroit,* 389 F.Supp. 922, 930 (E.D. Mich. 1975), severing on vagueness grounds that portion of a statute which prohibited solicitation of "lewd immoral acts" because men of ordinary intelligence would not be given fair warning of what acts were prohibited.

16. 335 A.2d at 221 (footnote omitted).

17. 335 A.2d at 223.

18. Alaska Const. Art. 1, § 22.

19. *Ravin v. State,* 537 P.2d at 504.

20. See *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (invalidating a state law which required parental consent to a minor's abortion); *Ravin v. State,* 537 P.2d at 511, n. 69; *Breese v. Smith,* 501 P.2d 159 (Alaska 1972).

21. *Ravin v. State,* 537 P.2d at 511, n. 69. See also *L. A. M. v. State,* 547 P.2d 827, 834 (Alaska 1976).

22. Appellant asserts that AS 11.15.134(a) violates the sexual privacy rights of juveniles because it criminalizes all sexual contact between two children under the age of 16. We find it unnecessary to reach this contention on the facts of this case.

23. *State v. Snyder,* 544 P.2d 230, 231 (Ariz. App. 1976), quoting *Prince v. Massachusetts,* 321 U.S. 158, 170, 64 S.Ct. 438, 88 L.Ed. 645 (1944). *Cf. Torres v. State,* 521 P.2d 386, 388–389 (Alaska 1974); *Hanby v. State,* 479 P.2d 486, 497–498 (Alaska 1970).

the act.[24] Therefore consent is not at issue under AS 11.15.134(a), and no presumption of nonconsent is involved. Thus we need not decide whether a presumption of non- consent would be constitutionally permissible.

The decision of the trial court is AFFIRMED.

24. *State v. Snyder,* 544 P.2d 230, 231–232 (Ariz.App. 1976).